UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-3582(DSD/JJG)

Advantage Media, LLC,

    Plaintiff,

v.                                                              ORDER

City of Eden Prairie,

    Defendant.

    E. Adam Webb, Esq. and Webb & Porter, 2625 Cumberland Parkway, Suite 220, Atlanta, GA 30339 and Stephen W. Cooper, Esq., Cooper Law Office, Loring Green East, 1201 Yale Place, Minneapolis, MN 55403, counsel for plaintiff.

    John M. Baker, Esq., Monte A. Mills, Esq., Pamela L. VanderWiel, Esq., Robin M. Wolpert, Esq. and Greene Espel, PLLP, 200 South Sixth Street, Suite 1200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion and denies plaintiff's motion.

BACKGROUND

This is a civil rights action under 42 U.S.C. § 1983 for the alleged deprivation of rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiff Advantage Media, LLC ("Advantage Media"), develops and operates advertising

signs. In May of 2004, defendant City of Eden Prairie ("Eden Prairie") denied Advantage Media's permit applications for proposed billboards because they did not conform with Eden Prairie's Sign Permit Ordinance ("sign code"). Advantage Media brought this suit in August of 2004, alleging that Eden Prairie's sign code violates the right to free speech, due process and equal protection under the law.

The stated purpose of Eden Prairie's sign code includes the protection and promotion of safety, order and aesthetics. Eden Prairie, Minn., Code § 11.70, subd. 1 (see Pl.'s Mem. Supp. Partial Summ. J. Ex. C at 1.). The code imposes numerous limitations on signs as to size, height, type, density, location and design. It prohibits motion and non-accessory signs in all districts, with limited exceptions. A "motion sign" is "[a]ny sign which revolves, rotates or has any moving parts or message." Code § 11.70, subd. 2(14). A "non-accessory sign" is off-site, meaning that it relates in its subject matter to a business, profession, commodity, service or entertainment not sold or offered upon the site where the sign is located. Id., subd. 2(20). Within commercial districts, signs may not exceed eighty square feet in size or twenty feet in height, must be set back at least fifteen or twenty feet from any street right-of-way, may not number more than one sign per building frontage and must be at least 300 feet apart. Id., subd. 4 (B)(1).

2

In February of 2004, Advantage Media submitted permit applications to Eden Prairie for fourteen proposed billboards. Thirteen of the billboards would be two-sided and measure 672 square feet, with triangular rotating columns to display three different images on each billboard face. The fourteenth billboard would be somewhat smaller at 160 square feet and would not rotate. On February 27, 2004, Eden Prairie City Planner Steven Durham notified Advantage Media that its applications were incomplete and requested additional information regarding location. On March 15, 2004, Advantage Media submitted the requested information.

On May 28, 2004, Eden Prairie denied Advantage Media's permit applications because some or all of the proposed signs exceeded the limits for height, size, sign base, number of signs per street front and space between sign faces, as set forth in the city's sign code. (See Baker Aff. Ex. R.) Further, the thirteen rotating billboards did not conform with setback requirements and violated the prohibitions against motion and non-accessory signs.

Plaintiff filed this suit on August 4, 2004, alleging that defendant's sign code deprived plaintiff and others of the right to free speech, due process and equal protection under the law pursuant to the First and Fourteenth Amendments. Plaintiff specifically asserts that the sign code (1) impermissibly regulates non-accessory signs, political messages, temporary construction signs and publicly-owned directional signs, among others, based on

content (2) lacks procedural safeguards, (3) affords officials undue discretion to grant or deny sign applications, (4) lacks evidence to supports its restrictions, (5) impermissibly restricts commercial speech and (6) favors certain businesses and organizations over others.  Defendant now moves for summary judgment on all claims.  Plaintiff moves for summary judgment on all claims except damages and attorney's fees.

## ANALYSIS

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Standing**

Plaintiff brings both as-applied and facial constitutional challenges to defendant's sign code. Defendant argues that plaintiff lacks standing to bring its claims. A party invoking federal jurisdiction must satisfy both constitutional and prudential requirements of standing. See Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1039 (8th Cir. 2002). As to constitutional standing under Article III, the plaintiff has the burden to show each of the following: (1) an "injury in fact" that is actual, concrete and particularized, (2) that the injury is "fairly traceable" to the conduct complained of and (3) that the injury will be redressed by a favorable decision. Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see Third Cong. Dist. Republican Party v. Klobuchar, 381 F.3d 785, 791-92 (8th Cir. 2004) (addressing standing requirement for First Amendment facial overbreadth claim).

In First Amendment cases, the fairly traceable prong of standing requires a plaintiff to challenge the statutory provisions upon which the restriction on speech was based. See Gospel Missions of Am. v. City of L.A., 328 F.3d 548, 554 (9th Cir. 2003) (plaintiffs' First Amendment claim was not fairly traceable to its injury because provision challenged was not the basis for restricting solicitation); cf. Brazos Valley Coalition for Life, Inc. v. City of Bryan, 421 F.3d 314, 323 (5th Cir. 2005) (no standing to challenge ordinance that did not apply to plaintiff's activities). As to redressability, a favorable decision must provide a possibility of allowing the plaintiff to engage in the speech at issue. See N. Ave. Novelties, Inc. v. City of Chi., 88 F.3d 441, 444 (7th Cir. 1996) (plaintiff bookstore had standing because it challenged all provisions of zoning code that could preclude its operation); Harp Adver. Ill., Inc. v. Vill. of Chi. Ridge, 9 F.3d 1290, 1292 (7th Cir. 1993) (plaintiff advertiser's inability to erect billboard would not be redressed by favorable decision because an unchallenged portion of sign code would block construction).

In addition to constitutional requirements, a prudential principle of standing requires that a plaintiff claim an injury to its own legal rights and interests rather than the legal rights or interests of third parties. See Allen v. Wright, 468 U.S. 737, 751 (1984). An exception to this prudential standing requirement is the overbreadth doctrine, which allows a party to challenge a statute on the ground that it could be unconstitutionally applied to others. See Bd. of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 484 (1989). A party may invoke the overbreadth doctrine and assert the legal rights of others if the party "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." Sec'y of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984) (allowing third party standing for First Amendment overbreadth claim).

The "adversarial zeal" requirement of the overbreadth doctrine may be met in a First Amendment case if (1) the plaintiff seeks to protect third party activities that are "at the heart" of its own injury-in-fact and (2) the plaintiff's interests in challenging the statute are consistent with the First Amendment interests of the third party or parties it seeks to represent. See id. at 958; see also Heritage Pub Co. v. Fishman, 634 F. Supp. 1489, 1495-96 (D. Minn. 1986) (third party standing for overbreadth claim existed because plaintiff's relationship with third parties was directly related to First Amendment rights asserted). For example, when a

7

commercial advertiser brings an overbreadth claim, it may assert the rights of noncommercial advertisers only if its displays convey a "substantial amount" of noncommercial advertising. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 504 (1981).

If the overbreadth doctrine applies in a First Amendment case, the plaintiff may challenge the constitutionality of a restriction on speech without having to "demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Broadrick v. Oklahoma, 413 U.S. 601, 602 (1973). The reason for applying the doctrine in such cases is because an overbroad statute might chill protected speech of third parties and otherwise escape adjudication. See Bd. of Trustees, 492 U.S. at 481. As a result, the overbreadth doctrine does not apply to commercial speech because such speech is less likely to be chilled. Bates v. State Bar of Ariz., 433 U.S. 350, 381 (1977); Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1225 (8th Cir. 1997). However, a party with merely a "commercial interest" in protected speech is not precluded from invoking the doctrine. Metromedia, 453 U.S. at 504 n. 11. Such parties include newspapers, radio stations, movie theaters and producers. Id.

As to constitutional standing, it is undisputed that plaintiff suffered an injury-in-fact because its sign permit applications were denied. However, the majority of plaintiff's specific challenges to the sign code are not fairly traceable to its injury

because they did not serve as the basis for denying the applications. For example, plaintiff's billboard applications were denied in part or in whole based on insufficient setback, rotating features and excessive size, sign base, height and density, but plaintiff does not specifically challenge the validity of those restrictions in the sign code.[1] Rather, plaintiff primarily challenges other alleged content-based restrictions and procedural mechanisms. As a result, an injunction against the portions of the sign code that plaintiff has specifically challenged would not allow it to erect the proposed billboards. See Harp, 9 F.3d at 1292. For that reason, plaintiff has also failed to show that a favorable decision would redress its injury.[2]

---

[1] The only challenge by plaintiff that might apply to all the reasons cited for rejecting its applications is the failure of the sign code to refer to evidence or studies that support the restrictions on signs. However, plaintiff's broad argument is not supported by the caselaw it cites, see infra Part III, and does not suffice to establish the constitutional standing requirements of a fairly traceable injury and redressability. Further, plaintiff does not specifically argue that the size, height, density, setback and motion restrictions are unconstitutional, nor does it cite any authority that would support such a conclusion. Therefore, the court finds that plaintiff's argument does not affect the standing analysis.

[2] The court notes that the Supreme Court has held that a plaintiff need only show an injury-in-fact and establish prudential standing to assert overbreadth claims. See Sec'y of Md., 467 U.S. at 958. However, a plaintiff must still establish all standing requirements as to the particular statutory provisions it challenges. See Harp, 9 F.3d at 1291-92. Thereafter, the plaintiff may assert the rights of others as to those statutory provisions without showing that any violation of third party rights is fairly traceable to its own injury or that vindicating such
(continued...)

Plaintiff cites the Fifth Circuit's opinion in North Avenue and argues that it has standing to bring its claims because it allegedly challenges defendant's entire sign code. See 88 F.3d at 443-44. The court in North Avenue held that the plaintiff adult bookstore had established redressability because it challenged the city's overall scheme of limiting adult uses to certain specified areas. See id. at 444. In other words, the plaintiff challenged the particular parts of the code that could preclude its operation. See id. Here, plaintiff's attack on defendant's sign code does not revolve around those provisions that could prevent its proposed billboards. Indeed, it does not specifically challenge the very parts of the code that were the basis for denying the billboard permits, as discussed above. Therefore, plaintiff does not in fact challenge the entire sign code, and the holding in North Avenue does not apply to this case.

Plaintiff also argues that it has standing to challenge defendant's entire sign code if it has been injured by at least one provision, citing numerous cases. However, the court finds the cases either inapplicable or unpersuasive. See, e.g., Metromedia, 453 U.S. at 496, 504 (advertisers challenged sign code only insofar as it restricted some or all use of their billboards); Tanner Adver. Group, LLC v. Fayette County, 411 F.3d 1272, 1276-77 (11th

---

²(...continued)
rights would redress its injury. See id.

Cir. 2005) (vacated and rehearing en banc granted by 2005 U.S. App. LEXIS 23549, at *1 (11th Cir. Nov. 1, 2005)); Ways v. City of Lincoln, 274 F.3d 514, 516-17 (8th Cir. 2001) (owner of adult entertainment businesses challenged only that ordinance within code that applied to his business operation); Krantz v. City of Fort Smith, 160 F.3d 1214, 1215 (8th Cir. 1998) (plaintiffs challenged four specific ordinances, all of which resulted in threatened legal injury to them); Advantage Media, LLC v. City of Hopkins, 379 F. Supp. 2d 1030, 1037-38 (D. Minn. 2005) (citing Tanner, which the Eleventh Circuit has vacated and for which rehearing en banc has been granted); Tom T., Inc. v. City of Eveleth, 2003 WL 1610779, at *3 (D. Minn. 2003) (plaintiffs challenged only that ordinance within code that restricted their business or livelihood). Therefore, plaintiff's argument is rejected. For all of the above reasons, the court finds that plaintiff has failed to establish the constitutional requirements of standing.

Even if plaintiff could establish that it has constitutional standing to bring its claims, it has failed to show it meets the requirements of prudential standing to invoke the overbreadth doctrine and assert the rights of third parties. In particular, plaintiff has made no showing that the third party activities it seeks to protect are "at the heart" of its own injury-in-fact or consistent with its own First Amendment interests. See Sec'y of Md., 467 U.S. at 958. In other words, as a commercial advertiser,

plaintiff has not shown or alleged that its displays convey a "substantial amount" of noncommercial advertising. See Metromedia, 453 U.S. at 504. For these reasons, plaintiff does not meet the adversarial zeal requirement to invoke the overbreadth doctrine. See Sec'y of Md., 467 U.S. at 956.

Plaintiff argues that it need not engage in a substantial amount of noncommercial speech to assert overbreadth claims, citing the Supreme Court's Metromedia decision and Eleventh Circuit caselaw. However, the court finds that those decisions do not support plaintiff's argument. In Metromedia, the Court implied that a commercial advertiser may have a commercial interest in protected speech and thereby assert an overbreadth claim if it engages in a substantial amount of non-commercial speech. See 453 U.S. at 504 n.11. The Eleventh Circuit cited Metromedia and allowed the plaintiff advertisers in both Café Erotica of Florida, Inc. v. St. Johns County and National Advertising Co. v. City of Fort Lauderdale to assert overbreadth claims. See Café Erotica, 360 F.3d 1274 (11th Cir. 2004) ; Nat'l Adver. Co., 934 F.2d 283 (11th Cir. 1991). However, the court did not explicitly address to what extent the plaintiffs engaged in noncommercial speech. See Café Erotica, 360 F.3d at 1281 (plaintiffs "primarily" engaged in commercial advertising); Nat'l Adver. Co., 934 F.2d at 284 (plaintiff advertised both commercial and non-commercial speech). Therefore, it is unclear whether the decisions in Café Erotica and

12

National Advertising rested upon a finding of substantial engagement in noncommercial speech.

Contrary to plaintiff's argument, this court understands the Metromedia holding to rest on the prudential requirement that a plaintiff's interests in challenging a statute must be consistent with the First Amendment interests of the third parties it seeks to represent. See Sec'y of Md., 467 U.S. at 958. To the extent that Café Erotica and National Advertising stray from that holding, the court declines to follow those decisions. Here, plaintiff fails to show that its interests include a sufficient or substantial amount of the noncommercial interests it seeks to represent. As a result, it cannot invoke the overbreadth doctrine. Therefore, even if plaintiff could establish constitutional standing, summary judgment in favor of defendant on plaintiff's overbreadth claims would be warranted.

**III. As-Applied First Amendment Claims**

Defendant contends even if constitutional standing were established, plaintiff's remaining as-applied claims nonetheless fail as a matter of law. Although plaintiff's as-applied and facial arguments were often intermixed, the court understands its as-applied challenges to be that defendant's sign code is unconstitutional because the code (1) does not meet the Central Hudson test for restrictions on commercial speech, (2) regulates commercial speech based on content, (3) lacks necessary procedural

13

safeguards and (4) allows excessive governmental discretion.³ The court will address plaintiff's claims in turn.

First, plaintiff argues that defendant's sign code fails to meet the Supreme Court's four-part test for analyzing the validity of restrictions on commercial speech. See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 563-66 (1980).  To be protected, and meet the first prong of the Central Hudson test, the speech must concern lawful activity and must not be misleading. Id.  The second, third and fourth prongs require that the government's restriction on such protected commercial speech "seeks to implement a substantial governmental interest," "directly advances that interest" and "reaches no further than necessary to accomplish the given objective," respectively.  Metromedia, 453 U.S. at 507 (citing Central Hudson, 447 U.S. at 563-66).

Plaintiff argues that defendant's stated interest in traffic safety and aesthetics cannot justify the restrictions in the sign code under the Central Hudson test. However, plaintiff ignores the Supreme Court's holding in Metromedia, which upheld almost identical restrictions on commercial advertising based on the city's interest in traffic safety and aesthetics.  See 453 U.S. at 507-12 (ordinance allowing only onsite advertising and specifically

---

³ Plaintiff has not asserted all the arguments it set forth in Count 11 of its complaint, which alleged as-applied constitutional violations. (See Compl. ¶ 74.)  The court considers the unaddressed arguments waived.

14

exempted signs was not broader than necessary to meet stated interests); see also Ackerly Communications of Northwest, Inc. v. Krochalis, 108 F.3d 1095, 1099 (9th Cir. 1997) ("Metromedia continues to control the regulation of billboards."). The court finds that defendant's sign code meets the requirements of the Central Hudson test because the code's restrictions are direct and appropriate in light of its stated purposes and the holding in Metromedia. Therefore, plaintiff's argument is rejected.

Second, plaintiff argues that the time, place and manner restrictions in defendant's sign code are unreasonable because they are not supported by any evidence or studies that they serve legitimate governmental interests. However, the Central Hudson test serves as the framework for analyzing regulations of commercial speech. See Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 554 (2001) (Central Hudson test is "substantially similar" to time, place, and manner test). The court will not repeat its analysis for plaintiff's as-applied arguments concerning the regulation of its speech. Moreover, plaintiff has not specified which of the imposed restrictions require supporting evidence or studies, and in what respect. The court declines to speculate. For these reasons, plaintiff's argument is rejected.

Third, plaintiff argues that defendant's sign code lacks necessary procedural safeguards because it did not impose time

limits in which a permitting or appealed decision must be made.[4] A licensing scheme for First Amendment expression must have certain procedural safeguards including (1) a limitation on the time within which the licensor must make a decision and (2) the availability of prompt judicial review.  See FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230 (1990).  An ordinance that regulates speech must contain such safeguards if not provided by state law.  See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville, 274 F.3d 377, 401 (6th Cir. 2001) (safeguards were inadequate where neither ordinance nor state law provided for prompt judicial review); Penn. Pride, Inc. Southampton Township, 78 F. Supp. 2d 359, 363-64 (M.D. Pa. 1999) (ordinance must contain safeguards if time limitation imposed by state law does not apply to the licensing at issue).

Although defendant's sign code did not specify time limits for processing applications, state law provides that the city must grant or deny a permit request within sixty days, after which the request is automatically approved.  See Minn. Stat. § 15.99, subd. 2(a).  The city may extend the deadline to 120 days upon written notice to the applicant.  See id., subd. 3(f).

Plaintiff does not argue that the state law time limitations are inapplicable or that defendant did not adhere to them.  Rather, plaintiff contends that the time limitations must be set forth in

---

[4] That part of defendant's sign code has since been amended to include time limits.

the ordinance itself to meet constitutional requirements. However, in <u>Freedman v. Maryland</u>, the Supreme Court stated that it is for the state to decide how to incorporate the required procedural safeguards. <u>See</u> 380 U.S. 51, 60 (1965). The Court implied that a specific time limit could be set by statute or authoritative judicial construction. <u>See</u> <u>id.</u> at 58-59. Plaintiff does not provide any reason or authority for the court to find constitutional safeguards lacking where it is undisputed that state law has applicable safeguards. The court finds that in this case, state law procedures were adequate as applied to plaintiff. Therefore, the court rejects plaintiff's argument as to procedural safeguards.

Finally, plaintiff asserts that defendant exercised undue discretion when it requested additional information not specified in the sign code.[5] The information requested included the location and setback for each sign as related to parking stalls, utility easements, sidewalks and other structures. (<u>See</u> Wolpert Aff. Ex. O.) Contrary to plaintiff's argument, the sign code does specify

---

[5] Plaintiff also facially challenges provisions in the sign code that required review and approval by the city manager. (<u>See, e.g.</u>, Eden Prairie, Minn., Code § 11.70, subd. 4(B)(10).) However, the city did not deny plaintiff's applications based on those provisions. Further, the provisions were removed from the code in December of 2004, which renders plaintiff's facial challenge and corresponding request for injunctive relief moot. <u>See</u> <u>Coral Springs St. Sys., Inc. v. Sunrise</u>, 371 F.3d 1320, 1346 (11th Cir. 2004); <u>Utah Animal Rights Coalition v. Salt Lake City Corp.</u>, 371 F.3d 1248, 1256-57 (10th Cir. 2004).

that applicants must submit a complete description of the sign, a sketch, and "such other information as shall be necessary to inform the Building Official of the kind, size, material, construction and *location* of the sign." (Sign Code § 11.70, subd. 5(A) (emphasis added).) Plaintiff does not explain how the challenged provision in its entirety grants defendant undue discretion or how defendant exceeded the informational limit as to location of the signs. The court finds that defendant did not exercise undue discretion when it requested additional information from plaintiff, but rather limited the inquiry to location details. Therefore, plaintiff's claim as to undue discretion must fail.

Based on all of the above, even if constitutional standing were established, summary judgment in favor of defendant on plaintiff's as-applied First Amendment claims is warranted.

**IV. Equal Protection Claim**

Plaintiff's equal protection claim fails for lack of standing, as discussed above. Further, its facial attack based on equal protection must fail because it has not asserted or shown "that '*any* application of the regulation is unconstitutional.'" Christopher Lake Dev. Co. v. St. Louis County, 35 F.3d 1269, 1275 (8th Cir. 1994) (emphasis in original) (quoting Eide v. Sarasota County, 908 F.2d 716, 725 n. 14 (11th Cir. 1990)). Such a showing is required because the overbreadth doctrine is not recognized "outside the limited context of the First Amendment." United

18

States v. Salerno, 481 U.S. 739, 745 (1987) (citing Schall v. Martin, 467 U.S. 253, 269 n. 18 (1984)); see also Ada v. Guam Soc. of Obstetricians & Gynecologists, 506 U.S. 1011, 1012 (1992) (overbreadth doctrine may apply only upon facial First Amendment free-speech grounds).  Plaintiff has not presented any argument concerning an as-applied equal protection challenge.  For these reasons, even if constitutional standing were established, summary judgment in favor of defendant on plaintiff's equal protection claim is warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Defendant's motion for summary judgment [Docket No. 48] is granted.

2.  Plaintiff's motion for partial summary judgment [Docket No. 60] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 13, 2005

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court